IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TONY MADRID,

        Plaintiff,

vs.                                            No. CIV 04-753 LCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 9), filed November 17, 2004. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits on May 10, 2004. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

**I.    STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

### II.    PROCEDURAL HISTORY

Plaintiff, now 44 years old, filed his application for disability insurance benefits on December 4, 2002, alleging disability commencing on September 13, 2002. (R. at 50-52). Plaintiff listed past relevant work as a custodian for the public schools and as a fence erector. (R. at 73).

Plaintiff's application for disability insurance benefits was denied at the initial level. (R. at

29-33). The date of this denial is not apparent from the record before me. (Id.) Mr. Madrid's application was denied at the reconsideration level on June 31, 2003. (R. at 36-40). Plaintiff did not retain an attorney, but appointed his wife, Mary Madrid, as his personal representative on August 25, 2003, at which time he also filed a Request for Hearing by Administrative Law Judge. (R. at 26, 41). This hearing took place on December 9, 2003. (R. at 189-205).

      The ALJ issued his decision on January 28, 2004 (R. at 11-21), analyzing Plaintiff's claim in accordance with the sequential evaluation set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found that Mr. Madrid had not engaged in substantial gainful activity since the alleged onset date of disability, although Mr. Madrid had been, at the time of the hearing, working on a part-time basis as a bus person for the previous ten (10) months. (R. at 15). At the second step, the ALJ found that the claimant had a combination of impairments which met the definition of 'severe' based on 20 C.F.R. § 404.1521. (Id.) However, the ALJ found that the impairments did not meet or equal the severity of any impairment found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ determined at step four that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, and was therefore unable to perform his past relevant work of school custodian. (R. at 17). He was also found to be limited to jobs requiring no more than occasional bending or stooping and requiring only occasional gripping or fingering, and further precluding jobs requiring manual dexterity or jobs exposing him to hazards, such as exposed heights or open machinery. (R. at 17-18). At step five, the ALJ consulted a vocational expert who opined that, despite his limitations, Mr. Madrid would be able to perform jobs existing in significant numbers in the national economy and that, therefore, he had not been under a disability, as defined in the Social

Security Act, at any time during the period under review. (R. at 19).

Plaintiff filed a Request for Review of Hearing Decision on March 22, 2004, (R. at 10) and the Appeals Council denied this request on May 10, 2004. (R. at 6-9). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On July 6, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.    FINDINGS

Plaintiff's medical records reveal that he underwent surgery for carpal tunnel syndrome in both wrists in 1999. (R. at 123). Plaintiff reported to the orthopedic clinic at the University of New Mexico in November of 2002 again complaining of recurrent severe bilateral carpal tunnel pain. (Id.) On examination, the physician noted his grip strength becoming weaker with worsening of the carpal tunnel syndrome in both wrists. The impression was of recurrent bilateral carpal tunnel syndrome with possible bilateral cubital tunnel syndrome. (Id.) The results of nerve conduction studies however revealed no bony or soft tissue abnormality, the impression being one of normal wrists bilaterally. (R. at 125). However, a physician in the UNM Orthopaedics and Rehabilitation Center indicated that Plaintiff should not return to work for a period of three months due to pain in the upper extremities. (R. at 181). Plaintiff indicated on his Disability Report that he had been prescribed Endocet for pain at this time by Dr. Tariq Hussain. (R. at 86).

As of May, 2003, Mr. Madrid continued to complain of wrist pain and numbness in the hands, as well as of elbow and shoulder pain and pain in the knees. (R. at 133-147). In March of 2003, Dr. Moneim prescribed Percocet for continued wrist pain. (R. at 137). More nerve conduction studies were performed in May which revealed symptoms of mild carpal tunnel

syndrome in the right wrist with examination showing painful movements of all small joints of the hand. (R. at 133). Mr. Madrid was also found at this time to have bilateral patellofemoral knee pain. (R. at 135). X-rays revealed some spurring of the patellofemoral joints in the knee. (Id.) Physical therapy was recommended and claimant was counseled on weight loss. (Id.) Dr. Daniel Wascher noted that as of May, 2003, Plaintiff was working in a restaurant. (R. at 135).

An EMG and nerve conduction study performed in May, 2003 on Plaintiff's wrists revealed abnormal findings, suggestive of left carpal tunnel syndrome. (R. at 139-140). On the right side, no definite evidence of carpal tunnel syndrome was ascertained. (Id.) X-rays of the knee were also obtained at this time, the findings of which were consistent with an old fracture through the lateral superior patella, also suggesting mild degenerative changes in the patella. (R. at 141-42). Strengthening exercises were recommended and Plaintiff's rehabilitation potential was felt to be good. (R. at 174).

Plaintiff's residual functional capacity assessment, apparently performed in June, 2003, revealed recurrent mild carpal tunnel syndrome in the left wrist as the primary diagnosis. (R. at 148). Plaintiff was noted to have exertional limitations which prevented him from frequently carrying more than ten pounds and from at any time carrying more than ten pounds. (R. at 149). Manipulative limitations of "feeling" were established as was a handling restriction. (R. at 151).

**IV.  ANALYSIS**

Plaintiff raises the following issues in him Motion to Reverse and Remand Administrative Agency Decision:

I. The ALJ failed to adequately develop the record.

II. The RFC Assessment is not supported by substantial evidence.

> III. The hypothetical questions posed to the VE were not supported by substantial evidence.
>
> **a.    Failure to Adequately Develop the Record**

Turning to Plaintiff's first allegation of error, he argues that, because he was proceeding without counsel at his hearing, the ALJ was under a heightened duty to procure evidence. Specifically, Plaintiff argues that the ALJ should have contacted Plaintiff's treating physicians to clarify the extent of his symptoms or should have obtained additional medical records. (Doc. 10).

Plaintiff is correct to point out that, where a Social Security claimant appears before an ALJ pro se, the ALJ has a heightened duty to investigate the issues presented and to develop the record on those issues. *Younger v. Shalala*, 30 F.3d 1265, 1267 (10th Cir. 1994). The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Henrie v. United States Dep't of Health & Human Svcs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). This duty however, is not a panacea for claimants, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). It is not the ALJ's duty to become the claimant's advocate. *Henrie*, 13 F.3d at 361.

In the present case, the hearing transcript reveals that the ALJ allowed Mr. Madrid to speak extensively on the nature of his impairments and the impact of these impairments on his physical abilities. (R. at 193-199). The claimant described his pain and its effect on his ability to function on a daily basis. He answered questions regarding his medications and other efforts to alleviate pain as well as several questions regarding residual functional capacity. (Id.) The claimant also indicated he was currently engaged in part-time work. (Id.) I find that the ALJ's

questioning, reviewed in conjunction with the record, leads to a conclusion that the duty of inquiry was satisfied in this matter.

In a closely related argument, Mr. Madrid claims that the ALJ improperly analyzed the medical evidence presented and failed in his responsibility to reconcile ambiguities in the record. (Doc. 10).  Plaintiff urges this Court to find that the ALJ erred in not obtaining evidence requested by claimant at the hearing and that the ALJ found ambiguities in the record which he failed to resolve by recontacting the treating physicians.  Plaintiff bases his argument primarily on a form signed by a physician[1] who indicated in December of 2002 that Plaintiff could not work for a period of three months due to "painful upper limbs" (R. at 181), and which opinion the ALJ rejected.  (R. at 17).

The ALJ, under the governing regulations, must recontact a treating physician when the information the doctor provides is "inadequate . . . to determine whether [the claimant is] disabled." 20 C.F.R. § 416.912(e).  However, it is not the rejection of the treating physician's opinion that triggers the ALJ's duty to recontact the physician, but the inadequacy of the evidence received from the treating physician. *Id.*  The ALJ apparently believed the information received from Plaintiff's physicians, Dr. Hussain, Dr. Moneim, and Dr. Weschler, was adequate for consideration; that is, it was not so incomplete that it could not be considered.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).  The ALJ determined that the conclusion reached by the physician in December of 2002 was not supported by the record as a whole because the opinion that Plaintiff could not return to work was not supported by objective medical evidence

---

[1] The ALJ's opinion stated that the signature on this form was illegible.  (R. at 18).  The Court has reviewed this form and believes the signature reads, "TH" or Dr. Tariq Hussain who, as discussed *supra*, is one of Plaintiff's treating physicians.

and was based on less detailed medical examinations than the ones he chose to rely on. (Id.) It was therefore within the ALJ's discretion to reject this evidence and Plaintiff's argument that the ALJ breached his duty as factfinder must be rejected.[2]

### b.     Assessment of Residual Functional Capacity

Plaintiff next argues that the ALJ's RFC assessment was not supported by substantial evidence. Mr. Madrid specifically claims that the ALJ improperly disregarded the opinion of the Administration's physician, who opined that the Claimant could not perform light work, but could only perform sedentary work. (Doc. 10). Plaintiff's argument mischaracterizes both the opinions of the Agency's physician and of the ALJ.

A claimant's RFC is determined by what the individual can do despite his limitations, and it is based upon all the relevant evidence, including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of his limitations. 20 C.F.R. §§ 416.945(a)-416.946. In his assessment, the Agency physician determined claimant had marked lifting restrictions, but no manipulative limitations, except with regard to an inability to frequently lift more than ten pounds. (R. at 149-152). In the opinion of this physician, Plaintiff would be able to perform a full range of "at least sedentary work." (R. at 17).

Although the ALJ rejected this opinion in part, he did so because he found that the record showed Mr. Madrid had nonexertional manipulative limitations that would prevent him from performing a full range of light or even of sedentary work. (Id.) In addition to having fingering

---

[2]Even had the ALJ accepted the findings that Plaintiff was unable to work in December, 2002, this alone would not necessitate a finding of disability. The clinician indicated that Plaintiff could not return to work for three months, or until approximately March, 2003. Plaintiff apparently presented no clinician's opinion which indicated he was unable to work at the time of the hearing. In fact, Plaintiff admitted that he was engaged in part-time work and had been for approximately ten months at the time of his hearing.

limitations which would prevent some sedentary work, the ALJ also found that claimant had bending and stooping restrictions which would prevent the full range of light work. (R. at 17-18). Further, the ALJ based this opinion on the fact that claimant was currently performing a job classified as "medium work" on a part-time basis and on claimant's assertion that his limitations would prevent him from performing this work full-time. (R. at 18).

A physician's opinion is not entitled to controlling weight on the basis of a fleeting relationship. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003). Nor is the Agency physician's opinion the only opinion in the record. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)(unless examining physician presented the only medical evidence pertaining to the relevant time period, the opinion of the examining physician is not entitled to the sort of deference as the opinion of a treating physician). Further, far from disregarding the opinion of the Agency physician, the ALJ in fact found claimant to be in some ways more limited than the findings of the physician would suggest. In this case the ALJ, contrary to Plaintiff's assertion, set forth specific reasons for not fully accepting the opinion of the examining physician and it is apparent that the RFC determination was supported by substantial evidence. As such, Plaintiff's contention that the ALJ erred in his evaluation of RFC must be rejected.

    **c.**    **Vocational Expert Testimony**

Finally, Plaintiff contends that the hypothetical questions posed to the vocational expert ("VE") at the hearing did not consider all of claimant's limitations as borne out by the record. (Doc. 10). The ALJ's questions to the vocational expert accounted for an individual limited to performing only light exertional work, with additional limitations for only occasional bending and stooping and for only occasional gripping or fingering. (R. at 200-201).

9

Plaintiff is correct to point out that the VE testified that the jobs listed in her response to the first hypothetical would not be available to an individual who could work only part-time. (R. at 202). However, this hypothetical set forth limitations which the ALJ found did not apply to the Plaintiff. A vocational expert's testimony is not binding on an ALJ if it incorporates limitations that the ALJ finds do not apply to the claimant. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1999). As such, the ALJ was correct not to incorporate the VE's response to this hypothetical into his decision and Plaintiff's argument on this point must be rejected.

## V.   CONCLUSION

Upon review of the evidence presented in Plaintiff's Motion to Reverse and Remand Administrative Decision, I have determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record. Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED.**

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**